[No. S091888. Dec. 20, 2001.]

RICHARD M. ORTEGA, Plaintiff and Respondent, v. KMART CORPORATION, Defendant and Appellant.

## COUNSEL

Law Offices of Diane Goldman, Diane Goldman; Sedgwick, Detert, Moran & Arnold, Frederick D. Baker and Katharine Demgen for Defendant and Appellant.

Kelly, Herlihy & Klein, Jonathan Allan Klein and Rachel Holzberg for California Retailers Association and the National Association of Chain Drug Stores as Amici Curiae on behalf of Defendant and Appellant.

Knox, Lemmon & Anapolsky and Thomas A. Knox for California Retailers Association as Amicus Curiae on behalf of Defendant and Appellant.

Law Office of Richard A. Lense and Richard °A. Lense for Plaintiff and Respondent.

Ghitterman & Ghitterman, Allan S. Ghitterman and Russell R. Ghitterman as Amicus Curiae on behalf of Plaintiff and Respondent.

---

**OPINION**

**CHIN, J.**—We granted review to decide under what circumstances, if any, a store owner may be liable for injuries to a business invitee from a dangerous condition on its premises where the evidence fails to show how long the dangerous condition existed prior to the injury. The cases require that an owner must have actual or constructive notice of the dangerous condition before incurring liability. (*Hatfield v. Levy Brothers* (1941) 18 Cal.2d 798, 806 [117 P.2d 841] (*Hatfield*); *Girvetz v. Boys' Market, Inc.* (1949) 91 Cal.App.2d 827, 829 [206 P.2d 6] (*Girvetz*).) The plaintiff has the burden to prove the owner had actual or constructive notice of the defect in sufficient time to correct it. (*Louie v. Hagstrom's Food Stores* (1947) 81 Cal.App.2d 601, 606 [184 P.2d 708] (*Louie*).) ▮ The question here is: If the plaintiff has no evidence of the source of the dangerous condition or the length of time it existed, may the plaintiff rely solely on the owner's failure to inspect the premises within a reasonable period of time in order to establish an inference that the defective condition existed long enough for a reasonable person exercising ordinary care to have discovered it? We conclude that evidence of the owner's failure to inspect the premises within a reasonable period of time is sufficient to allow an inference that the condition was on the floor long enough to give the owner the opportunity to discover and remedy it. (See *Bridgman v. Safeway Stores, Inc.* (1960) 53 Cal.2d 443 [2 Cal.Rptr. 146, 348 P.2d 696] (*Bridgman*).)[1]

---

[1] Evidence Code section 600, subdivision (b), defines an inference as "a deduction of fact that may logically and reasonably be drawn from another fact or group of facts found or otherwise established in the action." In other words, the inference supports the plaintiff's prima facie case of negligence and avoids the risk of nonsuit. It is important to distinguish an inference, which may, in the trier of fact's discretion, support the plaintiff's negligence claim, and relieve the plaintiff from the burden of proving how long the substance was on the floor, from a presumption, or "an assumption of fact that the law requires to be made from another . . . group of facts . . . ." (Evid. Code, § 600, subd. (a); see *People v. Bland* (1995) 10 Cal.4th 991, 1003, fn. 5 [43 Cal.Rptr.2d 77, 898 P.2d 391].)

## BACKGROUND

Richard M. Ortega (plaintiff) was shopping at the Torrance Kmart store (Kmart) when he slipped on a puddle of milk on the floor adjacent to the refrigerator and suffered significant injuries to his knee, including ligament tears. Less than a year later, plaintiff sued Kmart for personal injuries. At trial, plaintiff testified he did not notice whether the puddled milk was fresh or odorous, warm or cold. He could not present evidence showing how long the milk had been on the floor. Nonetheless, plaintiff claimed that because the evidence showed Kmart had not inspected the premises in a reasonable period of time prior to the accident, a jury could infer the puddle was on the floor long enough for Kmart employees to have discovered and remedied it.

Plaintiff's maintenance expert conceded he found no direct evidence indicating how long the puddle had been on the floor before plaintiff's fall. He did opine that stores like Kmart should implement three basic management tools relevant to floor maintenance: (1) accountability (the name of the person who performs the inspections should be identified); (2) frequency (management should know how often the floor is inspected); and (3) verification (a written record or some other form of verification should be presented to management).

Kmart's former store manager testified that although the store keeps no written inspection records, all Kmart employees are trained to look for and clean up any spills or other hazards. He also stated that several employees work in the pantry aisles next to the milk refrigerator, and that every 15 to 30 minutes an employee usually walked the aisle where plaintiff slipped. When asked whether the milk could have been on the floor for five minutes or two hours, the manager testified that in light of the staffing, it would be "hard for something [to] be on the floor for more than 15 or 30 minutes." He did admit, however, that the milk could have been on the floor for as long as two hours. On the day of the accident, the manager testified that management would not have had any idea if the aisle where the accident occurred was inspected at any time during that day. Kmart claimed that plaintiff failed to carry his burden of showing the milk puddle existed for a sufficient time to establish constructive notice to the store. (See *Girvetz, supra,* 91 Cal.App.2d at p. 829.)

The jury returned a verdict in plaintiff's favor, and awarded him $47,200 in damages. Kmart appealed.

The Court of Appeal affirmed the judgment. In so doing, it "looked at a plethora of similar cases" and concluded that plaintiff could be relieved of

his burden of showing how long the milk remained on the floor if he demonstrated the site had not been inspected within a reasonable period of time.

DISCUSSION

1. *Establishing liability*

■ It is well established in California that although a store owner is not an insurer of the safety of its patrons, the owner does owe them a duty to exercise reasonable care in keeping the premises reasonably safe. (*Girvetz, supra,* 91 Cal.App.2d at p. 829; Rest.2d Torts, § 332.) In order to establish liability on a negligence theory, a plaintiff must prove duty, breach, causation and damages. (Rest.2d Torts, § 281; *Nola M. v. University of Southern California* (1993) 16 Cal.App.4th 421, 426 [20 Cal.Rptr.2d 97].) A plaintiff meets the causation element by showing that (1) the defendant's breach of its duty to exercise ordinary care was a substantial factor in bringing about plaintiff's harm, and (2) there is no rule of law relieving the defendant of liability. (*Nola M., supra,* 16 Cal.App.4th at p. 427.) These are factual questions for the jury to decide, except in cases in which the facts as to causation are undisputed. (*Constance B. v. State of California* (1986) 178 Cal.App.3d 200, 207 [223 Cal.Rptr. 645].)

■ A store owner exercises ordinary care by making reasonable inspections of the portions of the premises open to customers, and the care required is commensurate with the risks involved. (See *Bridgman, supra,* 53 Cal.2d at p. 448.) If the owner operates a self-service grocery store, where customers are invited to inspect, remove, and replace goods on shelves, "the exercise of ordinary care may require the owner to take greater precautions and make more frequent inspections than would otherwise be needed to safeguard against the possibility that such a customer may create a dangerous condition by disarranging the merchandise" and creating potentially hazardous conditions. (*Ibid.*) "However, the basic principle to be followed in all these situations is that the owner must use the care required of a reasonably prudent [person] acting under the same circumstances." (*Ibid.*)

■ "On the issue of the fact of causation, as on other issues essential to the cause of action for negligence, the plaintiff, in general, has the burden of proof. The plaintiff must introduce evidence which affords a reasonable basis for the conclusion that it is more likely than not that the conduct of the defendant was a cause in fact of the result. A mere possibility of such causation is not enough; and when the matter remains one of pure speculation or conjecture, or the probabilities are at best evenly balanced, it

becomes the duty of the court to direct a verdict for the defendant." (Prosser & Keeton, Torts (5th ed. 1984) § 41, p. 269, fns. omitted.) In the context of a business owner's liability to a customer or invitee, speculation and conjecture with respect to how long a dangerous condition has existed are insufficient to satisfy a plaintiff's burden. (*Perez v. Ow* (1962) 200 Cal.App.2d 559, 561 [19 Cal.Rptr. 372] (*Perez*); *Girvetz, supra,* 91 Cal.App.2d at p. 831.) In other words, " '[p]roof of negligence in the air, so to speak, will not do.' " (*Palsgraf v. Long Island R. Co.* (1928) 248 N.Y. 339, 341 [162 N.E. 99, 59 A.L.R. 1253].)

■ Because the owner is not the insurer of the visitor's personal safety (see *Girvetz, supra,* 91 Cal.App.2d at p. 829), the owner's actual or constructive knowledge of the dangerous condition is a key to establishing its liability. Although the owner's lack of knowledge is not a defense, "[t]o impose liability for injuries suffered by an invitee due to [a] defective condition of the premises, the owner or occupier 'must have either actual or constructive knowledge of the dangerous condition or have been able by the exercise of ordinary care to discover the condition, which if known to him, he should realize as involving an unreasonable risk to invitees on his premises. . . .' " (*Ibid.,* quoting *Hatfield, supra,* 18 Cal.2d at p. 806.)

Courts have also held that where the plaintiff relies on the failure to correct a dangerous condition to prove the owner's negligence, the plaintiff has the burden of showing that the owner had notice of the defect in sufficient time to correct it. (*Louie, supra,* 81 Cal.App.2d at p. 607.) The courts' reasoning is that if the burden of proving lack of notice were placed on the owner in a slip-and-fall case, where the source of the dangerous condition or the length of time it existed cannot be shown, failure to meet the burden would require a finding of liability, effectively rendering the owner an insurer of the safety of those who enter the premises. (*McKellar v. Pendergast* (1945) 68 Cal.App.2d 485, 489 [156 P.2d 950].) Several courts believe that shifting the burden to the defendant would, contrary to existing negligence law, permit an inference of negligence to be drawn against the owner based solely on the fact that the fall or accident occurred. (*Brown v. Poway Unified School Dist.* (1993) 4 Cal.4th 820, 826 [15 Cal.Rptr.2d 679, 843 P.2d 624] [barring application of res ipsa loquitur in slip-and-fall cases]; *Girvetz, supra,* 91 Cal.App.2d at pp. 826, 830, 832.)

The plaintiff need not show actual knowledge where evidence suggests that the dangerous condition was present for a sufficient period of time to charge the owner with constructive knowledge of its existence. Knowledge may be shown by circumstantial evidence "which is nothing more than one or more inferences which may be said to arise reasonably from a series of

proven facts." (*Hatfield, supra,* 18 Cal.2d at p. 805.) Whether a dangerous condition has existed long enough for a reasonably prudent person to have discovered it is a question of fact for the jury, and the cases do not impose exact time limitations. Each accident must be viewed in light of its own unique circumstances. (*Louie, supra,* 81 Cal.App.2d at p. 608.) The owner must inspect the premises or take other proper action to ascertain their condition, and if, by the exercise of reasonable care, the owner would have discovered the condition, he is liable for failing to correct it. (*Id.* at p. 606.) In this case, we consider how a plaintiff may establish a defendant's constructive knowledge.

Most Courts of Appeal hold that a defendant is entitled to judgment as a matter of law if the plaintiff fails to show that the dangerous condition existed for at least a sufficient time to be discovered by ordinary care and inspection. These cases observe that as to business invitees, the owner should conduct frequent inspections. (See, e.g., *Lopez v. Superior Court* (1996) 45 Cal.App.4th 705, 716 [52 Cal.Rptr.2d 821]; *Hale v. Safeway Stores, Inc.* (1954) 129 Cal.App.2d 124, 129 [276 P.2d 118] (*Hale*) [plaintiff slipped on banana in self-service food store]; *Ahern v. S. H. Kress & Co.* (1950) 97 Cal.App.2d 691, 698 [218 P.2d 108] [plaintiff slipped on puddle in department store].)

In *Perez,* the plaintiff slipped on ice cream in a parking lot adjacent to a market. The plaintiff did not claim the defendant market had actual knowledge of the dangerous condition, so "[t]he issue in dispute [was] whether there [was] sufficient evidence to support a finding that defendants had constructive notice of the condition complained of in time to have remedied it before the accident occurred." (*Perez, supra,* 200 Cal.App.2d at p. 560.) The trial court found the evidence insufficient and granted nonsuit in the defendants' favor. In affirming the judgment, the *Perez* Court of Appeal observed that "[t]here is no substantial evidence from which it can be reasonably inferred that the ice cream had been at the place of plaintiff's fall for a sufficient period of time to charge defendants with constructive notice of its presence and, in the exercise of reasonable care, to remedy such condition." (*Id.* at p. 563; see also *Mackoff v. Biltmore Garages, Inc.* (1963) 222 Cal.App.2d 846, 850 [35 Cal.Rptr. 462, 4 A.L.R.3d 930] [plaintiff demonstrated injury-causing oil slick "was there a considerable length of time"]; *Travis v. Metropolitan Theatres Corp.* (1949) 91 Cal.App.2d 664, 668 [205 P.2d 475] [judgment for plaintiff affirmed where evidence established that putrid substance had been on floor long enough for crust to form on its surface]; *Louie, supra,* 81 Cal.App.2d at p. 608 [owner liable for syrup on floor after plaintiff proved condition existed long enough so that defendant should have discovered and remedied it].)

## 2. Creating an inference of negligence

Although the foregoing cases considered the owner's inspection practice as one of several factors in determining the length of time a condition existed prior to an accident, none of them held that failure to inspect alone could satisfy the plaintiff's burden to prove constructive knowledge. (*Girvetz, supra,* 91 Cal.App.2d at pp. 830-831.) In *Sapp v. W. T. Grant Co.* (1959) 172 Cal.App.2d 89, 91-92 [341 P.2d 826] (*Sapp*), however, the Court of Appeal affirmed the plaintiff's judgment, based on evidence that the clerk responsible for the area in which the plaintiff slipped on a spool of thread took a 20-minute coffee break without notifying anyone to cover her area during that period. The court observed: "We are of course mindful of the rule . . . that an invitor is entitled to have a reasonable time within which to discover and correct a dangerous condition on his premises. We are also mindful of defendant's contention that there is nothing in the evidence to indicate the length of time the spool had been on the floor. However, this latter factor loses significance when placed vis-à-vis the fact that the notions department remained unsupervised for a period of 20 minutes; for no matter what the interval of time the spool lay there it would have gone undetected during this 20-minute period. In effect, therefore, the critical question in this case was this: Was a 20-minute interval between inspections of the aisles commensurate with the exercise of ordinary care by defendant? This is a question that was properly left with the jury to decide." (*Id.* at p. 94; see also *Shaw v. Colonial Room* (1959) 175 Cal.App.2d 845, 848 [1 Cal.Rptr. 28] [failure to inspect tavern premises for two and one-half hours prior to slip-and-fall accident deemed sufficient evidence to establish negligence].)

This court adopted *Sapp*'s reasoning in a non-slip-and-fall case, *Bridgman, supra,* 53 Cal.2d 443. In *Bridgman,* the plaintiff testified that a display of pumpkins fell on her, knocking her to the ground. According to the store manager, the display had not been inspected for 45 minutes. After the Court of Appeal affirmed judgment in the defendant's favor, the plaintiff appealed and challenged several jury instructions, including the following: " 'The fact—if you find it to be a fact—that some person other than defendant or its employees so handled the pumpkins as to leave them in an unsteady and dangerous condition is not sufficient to charge defendant with negligence unless you also find: 1. That the accident was caused by a dangerous condition which was actually known to the defendant, or its agents or employees, or 2. That the dangerous condition was permitted to remain for such a space of time before the occurrence of the accident as would charge the defendant with notice of this condition and afford it an opportunity to correct it. In order to impose liability upon defendant for a dangerous condition created by some other customer, it must appear that defendant

knew or should have known of the dangerous condition.' " (*Bridgman, supra,* 53 Cal.2d at pp. 448-449.)

The *Bridgman* court believed that the foregoing instruction was "incomplete because it contained nothing with respect to defendant's duty to exercise ordinary care to discover dangerous conditions and to make reasonable inspections of its premises." (*Bridgman, supra,* 53 Cal.2d at p. 449.) The court found, however, that the instructions given at the plaintiff's request (including instructions informing the jury that ordinary care is determined in light of all the surrounding circumstances, and that the owner is not bound to discover defects a reasonable inspection would not disclose) adequately defined what constitutes ordinary care. (*Ibid.*) *Bridgman* declared it was the defendant's duty to exercise that care to avoid injury to the plaintiff and to keep the premises in a reasonably safe condition. (*Ibid.*)

In discussing the liability requirement of actual or constructive knowledge, *Bridgman* reviewed prior cases, including *Hale, Louie,* and *Girvetz,* and observed: "These cases declare that where the dangerous condition is brought about by natural wear and tear or by third persons, the owner, in order to be held liable, must have had either actual or constructive knowledge of the condition or have been able to discover it by the exercise of ordinary care and that the condition must have been one which the owner should have realized as involving an unreasonable risk to invitees. The requirement of actual or constructive knowledge is merely a means of applying the general rule stated above that the proprietor may be liable if he knew or by the exercise of reasonable care could have discovered the dangerous condition, and it does not alter the basic duty to use ordinary care under all the circumstances." (*Bridgman, supra,* 53 Cal.2d at p. 447.)

The court then reasoned that if a plaintiff can show the owner did not make an inspection within a time period that was reasonable under the circumstances, the plaintiff could raise the inference that the defective condition existed long enough so that the failure to discover it was not reasonable. (*Bridgman, supra,* 53 Cal.2d at p. 447.) The court specifically observed that, as in *Sapp* and other cases finding liability, "it is ordinarily a question of fact for the jury whether, under all the circumstances, the defective condition existed long enough so that it would have been discovered by an owner who exercised reasonable care." (*Bridgman, supra,* 53 Cal.2d at p. 447.)

 Because plaintiff here lacked direct proof that the defective condition existed long enough to have been discovered, he asks us to apply the *Bridgman* and *Sapp* logic to his action. He observes that in light of these

cases, Kmart's failure to inspect the premises within a reasonable time before the accident, as shown by witness testimony that an inspection had not been made within at least 15 to 30 minutes (and possibly up to two hours) before his accident, may give rise to an inference that the spilled milk remained on the floor long enough to enable Kmart, in the exercise of reasonable care, to discover and remove it. Plaintiff asserts that a rule that encourages store owners either to establish adequate maintenance and inspection procedures or to assume liability for an accident caused by a spill or other hazardous condition in their stores is not unreasonable. Plaintiff also observes that this rule would not make the owner the insurer of a patron's safety, and suggests that an owner can avoid liability, even if a patron is injured, by maintaining inspection procedures appropriate for the store.

We conclude that a plaintiff may prove a dangerous condition existed for an unreasonable time with circumstantial evidence, and that, as *Bridgman* observed, "evidence that an inspection had not been made within a particular period of time prior to an accident may warrant an inference that the defective condition existed long enough so that a person exercising reasonable care would have discovered it." (*Bridgman, supra*, 53 Cal.2d at p. 447.) In *Louie*, the Court of Appeal rejected the defendant's contention "that before the question can arise as to whether the owner or occupier should have discovered the defective condition there must be some evidence of how long the defective condition existed," and it must be established by direct evidence. (*Louie, supra*, 81 Cal.App.2d at p. 607.) *Louie* observed that defendant's view "is not the law. The true rule is that, while plaintiff must prove that the defective condition existed long enough so that by the use of reasonable care it should have been discovered and remedied, that fact, like other facts, may be proved by circumstantial as well as by direct evidence. . . ." (*Ibid.*)

*Louie* also observed that "The exact time the condition must exist before it should, in the exercise of reasonable care, have been discovered and remedied, cannot be fixed, because, obviously, it varies according to the circumstances. A person operating a grocery and vegetable store in the exercise of ordinary care must exercise a more vigilant outlook than the operator of some other types of business where the danger of things falling to the floor is not so obvious." (*Louie, supra*, 81 Cal.App.2d at p. 608.) As we have discussed (*ante,* at p. 1204), even though plaintiff did not present evidence of the length of time the milk was on the floor, the general manager, in fact, testified that the milk could have been on the floor for as long as two hours, and at best the floor was not inspected for 15 to 30 minutes. Like the court in *Sapp, supra,* 172 Cal.App.2d at page 94, we are mindful that an owner must have a reasonable time to make an inspection in order to discover the

dangerous condition and correct it. But in this case, the evidence of defendant's failure to inspect the premises within a reasonable period of time prior to the accident is indicative of defendant's negligence and creates a reasonable inference that the dangerous condition existed long enough for it to be discovered by the owner. In other words, the inference tends to establish a fact from which the existence of another fact in issue (that the milk was on the floor for a sufficient period of time to establish constructive knowledge) can be inferred. (See Evid. Code, § 600, subd. (b); see also *Ruiz v. Minnesota Mining & Mfg. Co.* (1971) 15 Cal.App.3d 462, 468 [93 Cal.Rptr. 270] [relevant evidence must have logical tendency to prove disputed matter and create reasonable inference as to existence or nonexistence of fact at issue].)

Kmart contends that in relying on a failure to conduct a reasonable inspection to relieve the plaintiff of the burden of proving how long the dangerous condition or substance existed, we inevitably allow the imposition of liability without proof of causation. Kmart relies on the observation that "simply ignor[ing] the knowledge requirement where there is evidence of a storekeeper's negligent failure to inspect . . . permits courts to impose liability where a storekeeper's negligence may not have caused the accident: A storekeeper's failure to inspect the premises does not necessarily lead to the conclusion that the dangerous condition existed long enough that he would have discovered it had he acted reasonably to inspect the premises." (Comment, *Reapportioning the Burden of Uncertainty: Storekeepers Liability in the Self-Service Slip-and-Fall Case* (1994) 41 UCLA L.Rev. 861, 878, fns. omitted.)

As the Court of Appeal observed, however, *Bridgman* simply allows the failure to inspect the premises within a reasonable time prior to the accident to give rise to an inference that the defective condition lasted long enough to have been discovered and remedied. We emphasize that allowing the inference does not change the rule that if a store owner has taken care in the discharge of its duty, by inspecting its premises in a reasonable manner, then no breach will be found even if a plaintiff does suffer injury.

The Court of Appeal below recognized that *Bridgman* allows the inference based on an important policy that places a premium on maintenance, a crucial factor in the storekeeper's duty to take precautions and make more frequent inspections when encouraging customers to inspect and handle the merchandise. (*Bridgman, supra,* 53 Cal.2d at p. 448.) Therefore, although *Bridgman* may define the limit of what constitutes a permissible inference, neither subsequent developments, including the rule's social and economic consequences, nor scholarly criticisms suggest the *Bridgman* rule is unsound or unworkable so that we should reconsider its holding. (See, e.g., *Moradi-Shalal v. Fireman's Fund Ins. Companies* (1988) 46 Cal.3d 287, 296-301 [250 Cal.Rptr. 116, 758 P.2d 58].)

### 3. *Other states*

As discussed below, Kmart relies on some sister state decisions that it claims support a contrary conclusion. We have reviewed those decisions and find only a few supportive of Kmart's position that failure reasonably to inspect the premises may not give rise to an inference that the defendant failed to exercise reasonable care in maintaining the premises. (See, e.g., *Winn-Dixie Stores, Inc. v. Marcotte* (Fla.Dist.Ct.App. 1989) 553 So.2d 213, 215 [refusing all evidence that inspections were not conducted in order to prove liability]; see also *Colevins v. Federated Dept. Stores, Inc.* (1994) 213 Ga.App. 49 [443 S.E.2d 871, 873] [plaintiff must prove period of time dangerous condition was allowed to exist]; *Gjelaj v. Wal-Mart Stores, Inc.* (E.D.Mich. 1998) 27 F.Supp.2d 1011, 1013 [applying Michigan law to hold that evidence of inadequate inspection alone insufficient to support a finding of constructive notice or liability].)

Other sister courts have adopted rules similar to our state rule, which allow plaintiffs to prove their case with evidence that the dangerous condition created by dairy products spilled on the floor had existed for a period sufficient to provide the owner with constructive notice. (See, e.g., Annot., Liability of Operator of Grocery Store to Invitee Slipping on Spilled Liquid or Semiliquid Substance (1983) 24 A.L.R.4th 696 [collecting cases].) Additional slip-and-fall cases are in accord. (See, e.g., *Thompson v. Economy Super Marts, Inc.* (1991) 221 Ill.App.3d 263 [163 Ill.Dec. 731, 581 N.E.2d 885, 888] [liability imposed if "substance was there a sufficient length of time so that in the exercise of ordinary care its presence should have been discovered"]; *J. C. Penney Company v. Barrientez* (1965) 1965 Okla. 166 [411 P.2d 841] [relying on *Bridgman* to show notice based on stairway strewn with cigarette butts and other debris]; *Bozza v. Vornado, Inc.* (1964) 42 N.J. 355 [200 A.2d 777, 779] [constructive notice found based on fact that floor was littered with drippings, napkins, and dirt].)

### CONCLUSION

We conclude that plaintiffs still have the burden of producing evidence that the dangerous condition existed for at least a sufficient time to support a finding that the defendant had constructive notice of the hazardous condition. (*Perez, supra,* 200 Cal.App.2d at p. 561.) We also conclude, however, that plaintiffs may demonstrate the storekeeper had constructive notice of the dangerous condition if they can show that the site had not been inspected within a reasonable period of time so that a person exercising due care would have discovered and corrected the hazard. (*Bridgman, supra,* 53 Cal.2d at p. 447.) In other words, if the plaintiffs can show an inspection was not made

within a particular period of time prior to an accident, they may raise an inference the condition did exist long enough for the owner to have discovered it. (*Ibid.*) It remains a question of fact for the jury whether, under all the circumstances, the defective condition existed long enough so that it would have been discovered and remedied by an owner in the exercise of reasonable care.

For the above reasons, we affirm the Court of Appeal's judgment.

George, C. J., Baxter, J., Werdegar, J., Kolkey, J.,* and McDonald, J.,† concurred.

**KENNARD, J.**—I concur in the judgment and in the opinion of the court for the reasons stated in my dissenting opinion in *Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 781 [107 Cal.Rptr.2d 617, 23 P.3d 1143] (*Saelzler*).

Here and in *Saelzler*, an injured person seeks damages from the owner of the premises where the injuries occurred. In *Saelzler*, a Federal Express employee attempting to deliver a package received serious injuries when she was beaten and sexually assaulted at a 28-building, 300-unit apartment complex. (*Saelzler, supra,* 25 Cal.4th at p. 769.) She sued the owner of the property to recover damages for her injuries. (*Ibid.*) Here, a man shopping at a Kmart store slipped and fell on milk spilled near a refrigerator display case, seriously injuring his knee. (Maj. opn., *ante,* at p. 1204.) He sued the corporation that owns and operates the store to recover damages for his injuries. (*Ibid.*)

Here and in *Saelzler*, the immediate or direct cause of the injury was the conduct of an unidentified third person or persons. In *Saelzler,* the immediate or direct cause of the woman's injuries was the assault committed by three unidentified criminals who beat her and tried to rape her. (*Saelzler, supra,* 25 Cal.4th at p. 769.) Here, the immediate or direct cause of the man's injuries was the act of an unidentified customer or customers who spilled the milk on which he slipped.

Here and in *Saelzler,* the injured person argued that the property owner failed to take reasonable precautions to avoid the sort of harm that the person suffered. In *Saelzler,* the plaintiff argued that the owner of the apartment

---

*Associate Justice of the Court of Appeal, Third Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

†Associate Justice of the Court of Appeal, Fourth Appellate District, Division One, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

complex failed to provide adequate security measures, including daytime security patrols and properly functioning security gates. (*Saelzler, supra,* 25 Cal.4th at p. 769.) Here, plaintiff argued that the store owner failed to conduct reasonably frequent and thorough inspections to clean up spills. (Maj. opn., *ante,* at p. 1204.)

Here and in *Saelzler,* the defendant property owner argued that the injured plaintiff could not prove causation because there was no way to know with certainty whether the precautions would have prevented the injuries. In *Saelzler,* the owner of the apartment complex argued that, because the assailants were never identified, the plaintiff could not establish that they would not have assaulted her had the owner taken the additional security measures. (*Saelzler, supra,* 25 Cal.4th at p. 769.) Here, defendant store owner argued that, because it could not be determined how long the milk had been on the floor before plaintiff's fall, plaintiff could not prove that more frequent inspections would have prevented his injuries. (Maj. opn., *ante,* at pp. 1204, 1211.)

In *Saelzler,* a bare majority of this court ruled for the defendant property owner, holding that the owner was entitled to summary judgment because the Federal Express employee could not prove that her attackers "would not have succeeded in assaulting her if defendants had provided additional security precautions" (*Saelzler, supra,* 25 Cal.4th at p. 767) or, in other words, "that roving guards would have encountered her assailants or pre-vented the attack" (*id.* at p. 777). I dissented. As I explained in my dissenting opinion, the majority had incorrectly imposed on the injured plaintiff at the summary judgment stage "the burden of showing causation with certainty" when her burden even at trial should only have been to establish causation as being " 'more likely than not,' " an issue " 'peculiarly for the jury.' " (*Id.* at p. 783 (dis. opn. of Kennard, J.), quoting Prosser, *Proximate Cause in California* (1950) 38 Cal. L.Rev. 369, 382, italics and fns. omitted.)

Here, a unanimous court rules for plaintiff shopper, holding that "evidence of the owner's failure to inspect the premises within a reasonable period of time is sufficient to allow an inference that the condition was on the floor long enough to give the owner the opportunity to discover and remedy it." (Maj. opn., *ante,* at p. 1203.) The court observes that causation ordinarily presents a factual question for the jury (*id.* at p. 1205) and that plaintiff need only show " 'that it is *more likely than not* that the conduct of the defendant was a cause in fact of the result' " (*ibid.,* italics added, quoting Prosser & Keeton, Torts (5th ed. 1984) § 41, p. 269).

Here, the court rejects defendant property owner's argument that its holding "allow[s] the imposition of liability without proof of causation."

(Maj. opn., *ante*, at p. 1211.) The court concludes that an owner's "failure to inspect the premises within a reasonable time prior to the accident" permits an inference of causation. (*Ibid.*)

Here, I find the court's reasoning sound and persuasive. A defendant property owner's negligent failure to inspect or patrol the premises to discover and remedy dangerous conditions may support an inference of causation when a rational trier of fact could conclude that reasonable inspections or patrols more likely than not would have prevented the plaintiff's injury. In *Saelzler, supra,* 25 Cal.4th 763, the court should have, but has not, applied the same reasoning to the very similar causation issue there presented.